UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW E.,[1] <br> Plaintiff, <br> v. <br> ANDREW SAUL, Commissioner of Social Security Administration, <br> Defendant. | Case No. 5:19-cv-01786-JC <br><br> MEMORANDUM OPINION |

## I.   SUMMARY

On September 18, 2019, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of his applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively "Plaintiff's Motion" and "Defendant's Motion" (collectively, "Motions"). The Court has taken the Motions under submission

---

[1] Plaintiff's name is partially redacted to protect his privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1 without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management
2 Order ¶ 5.

3   Based on the record as a whole and the applicable law, the decision of the
4 Commissioner is AFFIRMED. The findings of the Administrative Law Judge
5 ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 19, 2015, plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning on January 28, 2013, due to complex regional pain syndrome, arthritis, edema in the ankles, back problems, and other symptoms. (See Administrative Record ("AR") 99, 456). An application for Supplemental Security Income followed on August 18, 2016. (AR 433-42). An ALJ subsequently examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 7, 2018. (AR 299-318). On September 26, 2018, the ALJ determined that plaintiff has not been disabled since January 28, 2013, the alleged onset date. (AR 99-113). Specifically, the ALJ found: (1) plaintiff suffers from the following severe impairments: spinal stenosis, reflex sympathetic dystrophy, complex regional pain syndrome, and peripheral neuropathy (AR 102); (2) plaintiff's impairments, considered individually or in combination, do not meet or medically equal a listed impairment (AR 104); (3) plaintiff retains the residual functional capacity ("RFC") to perform a reduced range of light work (20 C.F.R. § 404.1567(b)) (AR 104-05);[2]

---

[2]The RFC assessment included the following restrictions:

[Plaintiff] can lift, carry, push and pull up to twenty pounds occasionally, ten pounds frequently; [plaintiff] can stand and/or walk combined total of two hours out of an eight hour day and sit for six hours out of an eight hour day with normal breaks; [plaintiff] would need the freedom to make posture adjustments at the

(continued...)

(4) plaintiff is capable of performing his past relevant work as a telemarketer (AR 110-11); alternatively, plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, specifically "fundraiser II," "survey worker," "information clerk," "order clerk, food and beverage," charge account clerk," and "call out operator" (AR 111-12); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms are not entirely consistent with the medical evidence and other evidence in the record (AR 106).

On August 5, 2019, the Appeals Council denied plaintiff's application for review of the ALJ's decision. (AR 1-4).

### III. APPLICABLE LEGAL STANDARDS

#### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds as stated in Sisk v. Saul, 820 F. App'x 604 (9th Cir. 2020); 20 C.F.R. §§ 404.1505(a), 416.905. To be considered disabled, a claimant

---

²(...continued)
workstation without being off task and from time to time may need to elevate the feet slightly above floor level; [plaintiff] can frequently climb stairs and ramps, occasionally climb ladders and scaffolds, frequently balance, stoop, kneel, occasionally crouch, and frequently crawl; [plaintiff] should avoid exposure to unprotected heights and workplace hazards; [plaintiff] should not operate a motor vehicle commercially, no repetitive operation of foot controls; [plaintiff] should avoid exposure to extreme temperatures and avoid heavy vibrations.

(AR 104-05).

must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B.    Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Comm'r of Soc. Sec.

Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

**IV.   DISCUSSION**

Plaintiff's sole claim is that the ALJ failed to provide clear, specific, and convincing reasons to discredit Plaintiff's statements and testimony. (Plaintiff's
///

Motion at 7-15). For the reasons stated below, the Court concludes that a reversal or remand is not warranted.

### A.  Pertinent Law

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process. 20 C.F.R. §§ 404.1529(a), (d). Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his subjective symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities. 20 C.F.R. §§ 404.1529(a), (c)(4); SSR 16-3p, 2017 WL 5180304, at *4-*10.[3] When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities. See SSR 16-3p, 2017 WL 5180304, at *8. In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give

---

[3]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation." See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11. The SSA subsequently republished SSR 16-3p making no change to the substantive policy interpretation regarding evaluation of a claimant's subjective complaints, but clarifying that the SSA would apply SSR 16-3p only "[when making] determinations and decisions on or after March 28, 2016[,]" and that federal courts should apply "the rules [regarding subjective symptom evaluation] that were in effect at the time" an ALJ's decision being reviewed became final. SSR 16-3p, 2017 WL 5180304, at *1, *13 n.27.

less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89.[4] This requirement is very difficult to satisfy. See Trevizo, 871 F.3d at 678 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and quotation marks omitted).

An ALJ's decision "must contain specific reasons" supported by substantial evidence in the record for giving less weight to a claimant's statements. SSR 16-3p, 2017 WL 5180304, at *10. An ALJ must clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement. Treichler, 775 F.3d at 1103 (citation omitted). Unless there is affirmative evidence of malingering, the Commissioner's reasons for rejecting a claimant's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks omitted), as amended (Apr. 9, 1996). "General findings are insufficient[.]" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). When an ALJ fails properly to discuss a claimant's subjective complaints, however, the error may not be considered harmless "unless [the Court] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Brown-

///

---

[4]It appears to this Court, based upon its research of the origins of the requirement that there be "specific, clear and convincing" reasons to reject or give less weight to an individual's subjective statements absent an affirmative finding of malingering, that such standard of proof remains applicable even when SSR 16-3p governs. See Trevizo, 871 F.3d at 678-79 & n.5 (citations omitted).

7

Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will usually not be harmless").

### B. Plaintiff's Statements and Testimony

Plaintiff testified about his symptoms at the hearing before the ALJ on August 7, 2018. (AR 303-10). Plaintiff indicated that one of the main symptoms that limits his functioning is the swelling in his feet and ankles, which is worse in the left leg than the right, and which sometimes extends into his knees. (AR 306). Plaintiff explained that the condition requires him to elevate his legs "several times" a day on most days, "and even elevating them doesn't fully alleviate the problem, it just kind of helps it a little bit, that it reduces the swelling and the pain." (AR 308).

Plaintiff stated that some days the pain and swelling are "more tolerable," and he only needs to elevate his legs "maybe once or twice and not very often." (AR 307-08). However, on other days, according to plaintiff, the pain is "one's worst nightmare," making him unable to walk or "function," and his parents must help take care of him. (AR 307). Plaintiff stated he has a bad day of pain and swelling "[a]t least one week out of every month" (AR 307), during which he must elevate his legs "all day long" (AR 308). He spends such days with his bed pushed up against the wall, with his feet up, while he "go[es] in and out of consciousness like that." (AR 308). He stated that he would be unable to work on such days due to "not being able to really care for [him]self, not able to shower properly, not able to get up and move around properly." (AR 307). Plaintiff stated that "[j]ust to get up to go to the restroom is a struggle, let alone trying to get to work, it's darn near impossible, if not impossible." (AR 308). He stated that he copes with these symptoms by trying to "distract" himself by watching television or "try[ing] to read books," and "try[ing] to just keep [his] mind off of it and keep[ing] occupied as best as [he] can." (AR 307).

///

Plaintiff testified that he was unable to work in his telemarketing job in 2016 in part because of his frequent need to elevate his feet. (AR 304). Plaintiff stated that he was also unable to handle that job because his "concentration was lacking" due to "heavy" pain medications, and he was unable to sit in a chair for "long periods of time," such as the "seven hours to ten hours a day" of sitting that the job required. (AR 304-05). Plaintiff testified that he was unable to perform his job as a golf course operations manager because he could not handle "walking, standing or sitting for long periods of time." (AR 305). In addition, plaintiff stated that he does not drive or take public transportation, and instead relies on parents or friends for rides. (AR 305-06).

Plaintiff stated that his treatment has included "epidurals as well as sympathetic nerve injections," and he "also tried physical therapy quite a few times, to no success, as well as medications." (AR 310). Plaintiff stated that the treatment has not really improved his symptoms, but has "kind of helped [his] continuity of life." (AR 310). He explained that he has "been able to maybe do some more things on [his] own that [he] wouldn't be able to do without the medication," as well as the "sympathetic nerve injections." (AR 310). Plaintiff stated that the injections "help for a short period of time, so it's kind of like a vacation," in that he "get[s] a little break from maybe taking the pain medications for a month, a little break from the pain, but then it just comes right back." (AR 310). Plaintiff stated he has "gone through this a few times now." (AR 310).

### C. Analysis

The ALJ reviewed the record and found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but determined that plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were "partially inconsistent with his disability allegations." (AR 106, 108). The ALJ supported this with specific,
///

clear, and convincing reasons, including inconsistencies between plaintiff's testimony and the evidence of record. (See AR 108).

First, the ALJ found that objective clinical evidence in the record suggested plaintiff was not as limited as he alleged. (AR 108; see also AR 106 (noting plaintiff's "allegations of chronic and debilitation pain and mobility hindrance are somewhat out of proportion to objective medical evidence documented during physical examinations")). This is a valid basis for assessing plaintiff's pain allegations, when accompanied by other reasons. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider . . . ."). Among the medical evidence in the record, the ALJ noted that plaintiff's "providers repeatedly observed [plaintiff] as being comfortable, in no apparent distress, or not exhibiting overt pain behavior." (AR 106; see AR 967, 1035, 1069, 1105, 1134, 1149, 1211-16). The ALJ also noted that there was no evidence that plaintiff sustained muscle atrophy during the relevant period, even though this is "a common side effect of prolonged or chronic pain due to lack of use of a muscle in order to avoid pain." (AR 106, 108). Instead, the ALJ found repeated evidence of intact motor strength and tone throughout the extremities, generally with no appreciable edema, clubbing, or cyanosis. (AR 106, 108; see AR 537-39, 765-66, 773-74, 777-78, 788, 842, 944, 961, 967, 984, 988, 1211-16, 1258). The ALJ also cited a "remarkably benign" neurological examination from March 31, 2015, in which the clinical findings "were generally insufficient to establish physical restrictions." (AR 108; see AR 523-45).

The ALJ observed, moreover, that plaintiff's symptoms varied or fluctuated, despite plaintiff's allegations of constant, extreme pain and lost physical capacity throughout the relevant period. (AR 108). For example, the ALJ pointed to a May 2016 treatment note in which plaintiff reported that he had not experienced pain the previous five months. (AR 108; see AR 1067). Moreover, while some

examinations reflected "gait disturbance" and reliance on a cane, others revealed plaintiff ambulating normally with no assistive device. (AR 108; see AR 537-40, 1033).

In addition, the ALJ found that some of plaintiff's allegations were inconsistent with his apparent ability to engage in certain activities, such as "performing in-home and swimming exercises, using stairs," and exhibiting "a general ability to ambulate." (AR 108; see AR 633, 1211). Plaintiff argues that it was "nonsensical" for the ALJ to discount his credibility based partly on his ability to engage in home exercise and water exercises when these activities were directed by his doctors. (Plaintiff's Motion at 12). However, the ALJ did not discount his testimony because he complied with his doctor's recommendations. Rather, the ALJ found that plaintiff's ability to engage in these exercises was inconsistent with his allegations of debilitating limitations, which is a valid and appropriate basis to discount a claimant's testimony. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (inconsistencies between claimant's testimony and claimant's reported activities valid reason for giving less weight to claimant's subjective complaints); Molina, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)).

The ALJ also found an inconsistency between plaintiff's testimony that he does not drive and records reflecting that plaintiff drove during the relevant period. (AR 108; see AR 535 (December 2014), 1033 (February 2016)). Plaintiff contends that there is no inconsistency because his testimony was in August 2018,

whereas the records that reference his driving are from March 2015 and February 2016. (Plaintiff's Motion at 11-12; see AR 305, 535, 1033). Regardless, particularly where there is no indication of significant deterioration during the relevant period, the ALJ reasonably determined that evidence of plaintiff's ability to drive was in conflict with the degree of plaintiff's alleged limitations.

Plaintiff contends that the medical evidence supports his testimony of significant pain because it shows that he "sought out and underwent non-conservative modes of treatment," such as injections and narcotic medications.[5] (Plaintiff's Motion at 11). However, the ALJ appropriately acknowledged these treatments, specifically noting that plaintiff took prescription pain medications such as Percocet, Soma, and Oxycodone (AR 108; see AR 526, 976, 1169, 1235), and that he underwent injection therapy in 2015 to treat his lower extremity pain and swelling symptoms, and received a lumbar spine epidural injection in May 2018 (AR 108; see AR 525, 608, 613, 625, 1241). The ALJ did not characterize these treatments as conservative. Nor did the ALJ dismiss that plaintiff clearly does experience some pain and physical limitations. Rather, the ALJ conducted a detailed assessment of the evidence of record and concluded that the degree and frequency of plaintiff's pain and limitations were not as severe or debilitating as alleged. The ALJ nonetheless assessed numerous physical limitations in plaintiff's RFC, including limitations to two hours of standing or walking and six hours of sitting, but with no repetitive operation of foot controls and the ability to adjust his posture and elevate his feet "from time to time" without being off task. (AR 105-05, 108).

In sum, plaintiff has failed to identify any material error in the ALJ's assessment of plaintiff's subjective testimony and her functional limitations. The

---

[5]Plaintiff also points to medical records of a back surgery on March 26, 2019, which was *six months after* the ALJ issued the decision. (Plaintiff's Motion at 11) (citing AR 37, 42).

ALJ's findings and conclusions must be upheld, as they are based on adequate reasons, under all applicable standards, and are supported by substantial evidence in the record. See Brown-Hunter, 806 F.3d at 492 (ALJ determines credibility, resolves conflicts in the testimony, and resolves ambiguities in the record); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld.").

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 4, 2020

                                                    /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE